Ismail Amin, Esq. (NV Bar No. 9343)
Lawrence Kulp, Esq. (NV Bar No. 7411)
**THE AMIN LAW GROUP, NV., LTD.**
3960 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
Telephone: (702) 990-3583
Facsimile: (702) 990-3501
E-mail:  iamin@aminlawgroup.com
             lkulp@aminlawgroup.com
*Attorneys for Plaintiff, Jesse Waits*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| JESSE WAITS, | Case No. 2:13-cv-01182-RCJ-CWH |
| Plaintiff, | **PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS PURSUANT TO FRCP 12(b)(6)** |
| vs. | |
| JOEL ZIMMERMAN, aka JOEL D. ZIMMERMAN, and DOES 1-10, | |
| Defendants. | |
| AND ALL RELATED COUNTERCLAIMS AND THIRD-PARTY CLAIMS | |

COMES NOW, Plaintiff and Counterdefendant, JESSE WAITS, by and through his attorneys, ISMAIL AMIN, ESQ., and LAWRENCE KULP, ESQ., of THE AMIN LAW GROUP, NV., LTD, and hereby moves this Honorable Court to dismiss, pursuant to *Rule 12(b)(6)* of the *Federal Rules of Civil Procedure*, all of the counterclaims brought against

1
**MOTION TO DISMISS**

Plaintiff by Defendants and Counterclaimants, Joel Zimmerman and William Morris Endeavor Entertainment, LLC, for failure to state a claim upon which relief can be granted.

AS GROUNDS THEREFOR, Plaintiff will rely on the appended Memorandum of Points and Authorities, the pleadings and papers heretofore filed in this action, and such further argument and other matters as the Court may entertain upon hearing this motion.

RESPECTFULLY SUBMITTED on this 31st day of July, 2013.

THE AMIN LAW GROUP, NV., LTD.

ISMAIL AMIN, ESQ.
Nevada Bar No. 9343
LAWRENCE KULP, ESQ.
Nevada Bar No. 7411
*Attorneys for Plaintiff, Jesse Waits*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. PROCEDURAL BACKGROUND

Plaintiff, JESSE WAITS ("Waits") brought this rather straightforward action in the Eighth Judicial District Court, Clark County, Nevada, to recover the $50,000 principal, plus interest, on a loan he made to Defendant, JOEL ZIMMERMAN ("Zimmerman"), no part of which has been repaid.

Zimmerman removed the action to this Court on the basis of diversity jurisdiction on July 3, 2013 *[Docket No. 1]*, and filed an answer and counterclaims, as well as a third-party complaint against DON JOHNSON ("Johnson"), on July 10, 2013 *[Docket No. 4]*. In so doing, Zimmerman also joined WILLIAM MORRIS ENDEAVOR ENTERTAINMENT,

LLC ("WME") as a defendant, counterclaimant, and third-party plaintiff pursuant to *Rules 13(h) and 19(a)* of the *Federal Rules of Civil Procedure*.

The counterclaims state three causes of action: (1) intentional misrepresentation, (2) negligent misrepresentation, and (3) negligence. All of these claims should be dismissed for failure to state a claim upon which relief can be granted. Moreover, all three counterclaims should be dismissed ***without leave to amend***, as they fail to state legally cognizable claims, and amendment would be futile.

## II. THE COUNTERCLAIMS

The counterclaims paint an entirely different picture than a mere unpaid loan from Waits to Zimmerman. Indeed, it is alleged that there was no loan at all, and that Waits' $50,000 was a "contribution" towards payment of a fee to a certain entertainer for whom Zimmerman was an agent. In a nutshell, here is Zimmerman's and WME's incredible story, all as alleged in the counterclaims:[1]

Zimmerman works for WME, a talent agency, and is an agent for a certain "electronic artist." Zimmerman booked an engagement for this artist at XS, a nightclub at the Encore Las Vegas. Waits is the managing partner of XS.

On February 21, 2011, before the artist's performance later that evening, Waits introduced Zimmerman to Johnson, representing that Johnson was a well-known, high-stakes gambler who was known to spend $100,000 to $500,000 at a nightclub on any given night. Waits said that Johnson was a valued patron of XS and the Wynn Las Vegas and would be at the artist's performance that evening.

---

[1] These facts are taken from the allegations of the counterclaims, and Waits does not concede their veracity.

During that performance, Zimmerman sat at Waits' table, and Johnson sat at an adjacent table. Waits asked Zimmerman to talk to Johnson. Zimmerman obliged. In the ensuing conversation, Johnson offered to pay the artist (a famous disk-jockey) $200,000 if he would play a certain song.

Zimmerman then spoke to Waits, who vouched for Johnson, saying that Johnson was good for the money and could be trusted to pay the $200,000 after the artist's performance. In reliance on Waits' assurances, Zimmerman relayed the offer to the artist, who accepted and played the requested song.

Johnson spent $400,000 at XS that evening. And later that evening, Waits and Zimmerman found Johnson "losing a lot of money" at a high-stakes blackjack table. When asked for the $200,000, Johnson became angry and refused to pay. Waits later told Zimmerman that he would speak to Johnson the next day and collect the $200,000 payment.

The next day, Waits told Zimmerman that he had been unable to collect the payment because Johnson had left Las Vegas on a private jet.

Zimmerman told Waits that WME would have to pay the $200,000 fee in order to preserve its relationship with the artist. Waits then offered (apparently out of the goodness of his heart) to contribute $50,000, and he did so. WME put up the remaining $150,000.

Johnson has never paid a penny. It seems odd that the third-party claim against Johnson does not seek to recover WME's $150,000 by way of claims for breach of contract, unjust enrichment, or indemnification. Instead, they want to recover it from Waits for having misrepresented Johnson's intention to perform.

## III. DISCUSSION

Several deficiencies are readily apparent throughout the counterclaims. First, as to the counterclaims for intentional and negligent misrepresentation, the alleged misrepresentations are not actionable because they were mere *opinions or predictions* that Johnson would pay the $200,000 fee, not representations of facts existing at the time of the representations. One cannot infer from a mere breach of contract that the obligor, at the time of making a contract, intended not to perform. And yet, Johnson's non-performance is the only fact that Zimmerman and WME have alleged.

Second, as to the counterclaim for intentional misrepresentation, scienter has not been pled with any degree of particularity. It is baldly asserted that Waits *knew* that Johnson had no intention to pay the $200,000 fee, and that Waits *intended* to defraud Zimmerman. No facts, however, have been pled to permit such inferences.

Third, as to the counterclaim for negligent misrepresentation, no facts have been pled from which it can be inferred that Waits had a pecuniary interest in the subject transaction or that the alleged misrepresentations were made in the course of his business or profession. These are essential elements of a claim for negligent misrepresentation in Nevada, *i.e.*, without these elements being present, Waits did not owe the counterclaimants any duty of care.

/ / / / /

/ / / / /

/ / / / /

Lastly, in regard to the counterclaim for negligence, there are no allegations that Waits was in privity of contract with the counterclaimants, or that he caused injuries to their persons or property. Therefore, this is not a legally cognizable claim, because it is barred by the economic loss doctrine.

### A. Legal Standards on Motions to Dismiss

A motion to dismiss under *FRCP 12(b)(6)* tests the legal sufficiency of the claims asserted in a complaint. The issue on a motion to dismiss for a failure to state a claim is not whether the claimant will ultimately prevail; but rather, the inquiry is whether the claimant is entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). Importantly, a court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008); *see also*, *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004). Moreover, a court must not assume that the plaintiff can prove facts that it has not alleged or that the defendants have violated laws in ways that have not been alleged. *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897, 902, 74 L.Ed.2d 723, 730 (1983).

*Rule 12(b)(6)* is read in conjunction with *Rule 8(a)*, which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." While *Rule 8(a)* does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662,

679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868, 884 (2009). A complaint must be dismissed if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L.Ed 2d 929, 949 (2007). In *Bell Atlantic*, the Court also stated that a complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Id.* at 550 U.S. 562, 129 S.Ct. 1969, 167 L.Ed.2d 944.

Although courts generally assume that the facts alleged are true, courts do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Accordingly, conclusory allegations and unwarranted inferences are insufficient to defeat a motion to dismiss. *In re Stac Electronics Securities Litigation*, 89 F.3d 1399, 1403 (9th Cir. 1996).

In keeping with these principles, allegations which are no more than conclusions are not entitled to the assumption of truth. *Iqbal*, at 556 U.S. 681, 129 S. Ct. 1951, 173 L.Ed.2d 886. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

Finally, a complaint must be dismissed if it fails to state a legally cognizable claim. *Bell Atlantic*, 550 U.S. 554, 127 S.Ct. 1964, 167 L.Ed.2d 929 (2007) ("must give fair notice of a legally cognizable claim"); *see, e.g., Morey v. Miano*, 141 F.Supp.2d 1061, 1062 (D. N.M. 2001).

/ / / / /

/ / / / /

## B. The First Counterclaim (Intentional Misrepresentation)

The elements of fraud are (1) a false representation by the defendant, (2) the defendant's knowledge or belief that the representation is false (or insufficient basis for making the representation), (3) the defendant's intention to induce the plaintiff to act or refrain from acting in reliance upon the misrepresentation, (4) the plaintiff's justifiable reliance upon the representation, and (5) damage to the plaintiff resulting from such reliance. *Lubbe v. Barba*, 91 Nev. 596, 599, 540 P.2d 115, 117 (1975). The second and third elements describe the requisite *scienter* for there to be liability for the misrepresentation.

Claims of fraud must be pled at a higher level of particularity than that required under *FRCP 8(a)*. In alleging fraud, "a party must state with particularity the circumstances constituting fraud . . . . Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *FRCP 9(b)*. The absence of a requirement that scienter be alleged with specificity is based on the premise that a plaintiff cannot be expected to read the defendant's mind.

> This does not mean, however, that plaintiffs are relieved of their burden of pleading circumstances that provide at least a minimal factual basis for their conclusory allegations of scienter. ***"It is reasonable to require that the plaintiffs specifically plead those events"*** which ***"give rise to a strong inference"*** that the defendants had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." [Citation omitted, emphasis added].

*The Connecticut Nat'l Bank v. Fluor Corp.*, 808 F.2d 957, 960 (2nd Cir. 1986). This is in accord with *Ashcroft* and *Bell Atlantic*, discussed above, which held that a conclusory allegation must be supported by factual allegations from which the ultimate fact can be inferred. See also *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 247


(6th Cir. 2012) ("Plaintiff still must plead facts about the defendant's mental state, which, if accepted as true, make the state-of-mind allegation 'plausible on its face.'")

In the present case, Zimmerman and WME have alleged threadbare **conclusions** that Waits **knew** his assurances that Johnson would pay the $200,000 fee were false, and that he **intended** thereby to commit a fraud. These are not allegations of fact. They are conclusions which lack one single allegation of fact from which those conclusions can be inferred. It seems that the counterclaimants are relying on the mere fact that Johnson reneged on the agreement. That is not enough.

In the first place, to be actionable, a representation must be false as to a fact **existing at the time the representation was made**. Generally, an opinion or prediction about a future event cannot be the basis of a claim for misrepresentation.

> In tort law, a representation ordinarily will give rise to a cause of action for fraud and deceit only if it is a representation of fact rather than an opinion. [Citation omitted.] "**Predictions as to future events, or statements as to <u>future action by some third party</u>, are deemed opinions, and not actionable fraud.**" [Citation omitted, emphasis added.]

*Nibbi Bros. v. Home Fed. Sav. & Loan Ass'n*, 253 Cal.Rptr. 289, 294 (Cal.App. 1988). The misrepresentation must be about an **existing** fact, not a prediction of future events. *Richard P. v. Vista Del Mar Child Care Service*, 165 Cal.Rptr. 370, 372 (Cal.App. 1980).

More specifically, the mere fact that an agreement is not performed does not allow the inference of a false promise. *See Jhaveri v. ADT Sec. Serv., Inc.*, 2012 U.S. Dist. LEXIS 38100 (C.D.Cal. 2012), where promissory fraud was alleged. The observations and holding of the *Jhaveri* court are especially germane to this issue:

> "[F]raudulent intent cannot be proven . . . by simply pointing to the defendant's subsequent failure to perform as promised." [Citation omitted.]
>
> \* \* \*
>
> Consequently, "*Rule 9(b)* requires plaintiffs to plead facts establishing the falsity of a statement *at the time it is made*." [Citation omitted, emphasis in the original.]
>
> \* \* \*
>
> [A] plaintiff is precluded from "simply pointing to a statement by a defendant, noting that the content of the statement conflicts with the current state of facts, and concluding that the charged statement must have been false." [Citation omitted.]

*Id.*, at 14. The consequent holding in *Jhaveri*, is directly applicable in the case at bar.

> Here, Plaintiff failed to satisfy the pleading requirements of *Rule 9(b)*. The complaint does not allege facts from which the Court can infer that Defendant's contractual assurances were false *when made*. [Emphasis in original.] *That Defendant failed to perform on these promises does not plausibly give rise to an inference that Defendant never intended to honor the contract* [emphasis added]— "[s]uch an assumption is unwarranted because it contradicts the heightened pleading requirements [for fraud] and *would allow 'every breach of contract [to] support a claim of fraud so long as the plaintiff adds to his complaint a general allegation that the defendant never intended to keep her promise.*'" [Citation omitted, emphasis added.]

That is precisely the counterclaimants' tactic in the present case, that is, an attempt to transform a breach of contract case into a fraudulent inducement case by making a general allegation of scienter.

Allegations which *do* appear in the counterclaims actually weaken any possible inference of promissory fraud from the mere fact of Johnson's breach of the promise, *e.g.*, the allegations that Johnson spent $400,000 that night at XS, and that he was later found at a blackjack table "losing a lot of money." Could it be that Johnson's profligate spending and

losses after making the agreement caused him to decide not to honor it? The counterclaims are bereft of facts in this regard.

Because Zimmerman and WME have failed to adequately plead scienter, the first counterclaim (intentional misrepresentation) must be dismissed. Furthermore, this counterclaim should be dismissed ***without leave to amend***, because the alleged misrepresentations were clearly opinions and predictions about Johnson's future conduct and are, therefore, not actionable.

### C. The Second Counterclaim (Negligent Misrepresentation)

This counterclaim is infirm for one of the same reasons the first counterclaim should be dismissed, that is, the alleged misrepresentations are not about facts existing at the time the misrepresentations were made, but were opinions and a prediction of future actions of a third party, Johnson.

This counterclaim is infirm for other reasons, as well. For the elements of negligent misrepresentation, the Nevada Supreme Court, in *Bill Stremmel Motors, Inc. v. First Nat'l Bank of Nev.*, 94 Nev. 131, 575 P.2d 938 (1978), adopted *Restatement (Second) of Torts*, § 552, pp. 126-127 (1997 ed.)., which states in relevant part:

> One who, in the course of his business, profession or employment, or in any other action in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information.

*Id.*, 94 Nev. 134, 575 P.2d 940. Liability under the foregoing rule is based upon negligence of the actor in failing to exercise reasonable care or competence in supplying correct information. *Comment a* to the *Restatement*.

The counterclaimants, however, have not alleged that Waits had a pecuniary interest in the subject transaction. According to *Comment d* to the *Restatement*, a pecuniary interest is generally viewed as the consideration paid in connection with the transaction. But there is no allegation in this regard.

Moreover, it has not been alleged that Waits was in the business or profession of giving out financial information to third parties about patrons of the Wynn or XS—or about anybody else, for that matter. Indeed, it is merely alleged that he is a nightclub owner and manager. As noted in *Comment d* to the *Restatement*:

> [W]hen one who is engaged in a business or profession steps entirely outside of it, as when an attorney gives a casual and offhand opinion on a point of law to a friend whom he meets on the street, or what is commonly called a "curbstone opinion," it is not to be regarded as given in the course of his business or profession; and since he has no other interest in it, it is considered purely gratuitous. The recipient of the information is not justified in expecting that his informant will exercise the care and skill that is necessary to insure a correct opinion and is only justified in expecting that the opinion will be an honest one.

Hence, this counterclaim fails to plead facts from which it can be inferred that Waits had a duty to exercise reasonable care when he vouched for Johnson and made representations that Johnson would indeed pay the $200,000 fee. Zimmerman could only justifiably rely on Waits at least being honest—a point already addressed earlier in this brief regarding scienter.

Since Zimmerman and WME have failed to allege that Waits was acting in the course of his business or profession, or that he had a pecuniary interest in the transaction, then they have failed to bring Waits' conduct within the purview of *Restatement (Second) of Torts*, § 552. This is tantamount to a failure to allege facts from which it can be inferred that Waits

had any duty to Zimmerman other than honesty—or that Zimmerman and WME could have justifiably relied on anything more. Hence, the counterclaim for negligent misrepresentation must also be dismissed. Furthermore, this counterclaim should be dismissed ***without leave to amend***, because the alleged misrepresentations were clearly opinions and predictions about Johnson's future conduct and are, therefore, not actionable.

### D. The Third Counterclaim (Negligence)

To the extent this counterclaim is just a recharacterization of the previous counterclaim for negligent misrepresentation, it is subject to the same infirmities as the latter, and must be dismissed. It appears, however, that Zimmerman and WME are broadening the claim somewhat to include subsequent omissions by Waits that might have reduced or prevented their losses. To that extent, it is an additional and different claim.

No matter, because this claim is barred as a matter of law. Quite aside from the question of whether the counterclaimants have alleged sufficient facts to establish a claim of negligence, this third counterclaim clearly fails to state a legally cognizable claim. Zimmerman and WME have not alleged that Waits either had a contract with them or caused injury to their persons or property. They have alleged only economic losses. That is a fatal defect.

As stated by the Nevada Supreme Court, in *Culinary Workers Union v. Stern*, 98 Nev. 409, 410-411, 651 P.2d 637, 638 (1982):

> The well established common law rule is that absent privity of contract or an injury to person or property, a plaintiff may not recover in negligence for economic loss.

*See also, Davis v. Beling*, 128 Nev.Adv.Op. 28, 34-35, 278 P.3d 501, 514 (2012) (the economic loss doctrine "bars recovery in unintentional tort actions"); *Arco Products Co. v. May*, 113 Nev. 1295, 1298-1299, 948 P.2d 263, 266 (1997) (district court erred in failing to dismiss a negligence claim barred by the economic loss doctrine); *Central Bit Supply v. Waldrop Drilling & Pump*, 102 Nev. 139, 140-141, 717 P.2d 35, 36-37 (1986) (cannot recover in negligence for purely economic loss).

This defect in the third counterclaim cannot be cured by amendment, as it would require new allegations of injuries of a completely different nature. Thus, this counterclaim must be dismissed ***without leave to amend***, because amendment would be futile. *See Foreman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222, 226 (1962); *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

### E. Conclusion

In light of the foregoing, all of the counterclaims alleged by Zimmerman and WME against Waits should be dismissed with prejudice or without leave to amend.

RESPECTFULLY SUBMITTED on this 31st day of July, 2013.

THE AMIN LAW GROUP, NV., LTD.

ISMAIL AMIN, ESQ.
Nevada Bar No. 9343
LAWRENCE KULP, ESQ.
Nevada Bar No. 7411
*Attorneys for Plaintiff, Jesse Waits*